IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) ADVANCE RESEARCH CHEMICALS, INC., an Oklahoma corporation,<br><br>    Plaintiff,<br><br>v.<br><br>(1) PDC MACHINES, INC., a Pennsylvania corporation,<br><br>    Defendant. | Case No. 19-CV-237-JED-FHM<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Advance Research Chemicals, Inc. ("ARC") files this Complaint against Defendant, PDC Machines, Inc. ("PDC") and in support states the following:

**PARTIES, JURISDICTION AND VENUE**

1. ARC is a corporation organized under the laws of the State of Oklahoma with a principal place of business located at 1110 West Keystone Avenue, Catoosa, Oklahoma 74015. ARC is in good standing with the State of Oklahoma and is properly registered to transact business within the State of Oklahoma.

2. PDC is a foreign corporation organized under the laws of the State of Pennsylvania with a principal place of business located at 1875 Stout Drive, Warminster, Pennsylvania 18974.

3. This Court has subject-matter jurisdiction over all causes of action asserted in this Complaint pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and diversity of citizenship exists as between ARC and PDC.

4.      This Court has personal jurisdiction over PDC.  Among other things, PDC has transacted business, performed work and services, and contracted to supply goods or services within the State of Oklahoma.  In addition, PDC caused and committed tortious injuries within the State of Oklahoma.  The causes of action asserted in this Complaint arise out of PDC's numerous contacts with the State of Oklahoma. PDC caused injury, and continues to cause injury, to ARC and to property within the State of Oklahoma through PDC's products that were designed and manufactured by PDC and which are being used or consumed in the State of Oklahoma in the ordinary course of commerce, trade and use.  PDC breached its warranty obligations by failing to remedy the defective products in the State of Oklahoma. The product failures occurred in the State of Oklahoma and PDC sold the products with full knowledge that ARC's facilities and use of the products would be in the State of Oklahoma.  PDC's contacts within the State of Oklahoma satisfy all Constitutional limitations on this Court exercising personal jurisdiction over PDC.

5.      Venue is proper in this Court because the causes of action asserted in this Complaint arose in Rogers County, Oklahoma.

## GENERAL ALLEGATIONS

6.      All conditions precedent to the bringing of this action have been performed, have occurred, or have been waived or excused.

7.      ARC manufactures high purity inorganic fluorine compounds.  During the manufacturing process, fluorine gas is moved through piping to reactors where the fluorinated compounds are made for ARC's customers. The fluorine gas is transported through the piping system by using a compression system.  Fluorine gas is dangerous and there are significant safety protocols that must be followed in the handling and use of fluorine gas.  The systems used by ARC in the transportation of fluorine gas are inspected and maintained to prevent leaks and provide the highest attainable safety standards for persons working with the fluorine system.

8.  ARC contracted with PDC to provide certain diaphragm compression equipment (the "Compression Equipment") for installation and operation at its facility located at the Port of Catoosa ("ARC's Facility").

9.  In March 2015, ARC issued its first Purchase Order regarding a diaphragm compressor ("Compressor #1") and the Purchase Order was accepted by PDC ("PO #1").

10. In August 2015, Compressor #1 was delivered to ARC's Facility.

11. In September 2015, ARC issued its second Purchase Order regarding a second diaphragm compressor ("Compressor #2") and the Purchase Order was accepted by PDC ("PO #2").

12. In March 2016, Compressor #2 was delivered to ARC's Facility.

13. In July 2018, Compressor #2 was returned to PDC based on numerous failures during attempted operation of Compressor #2 by ARC.

14. In September 2018, PDC shipped Compressor #2 to ARC and Compressor #2 was delivered and returned to ARC's Facility.

15. Prior to issuing PO#1 and PO#2, ARC provided certain specifications to PDC and PDC agreed to, *inter alia*, design, supply, deliver, warrant, and guarantee the Compression Equipment for the purpose of safely and properly compressing fluorine gas during ARC's manufacturing process.

16. PDC received and reviewed the contract specifications and, in turn, designed and manufactured the Compression Equipment for use and operation by ARC.

17. PDC represented to ARC that the Compression Equipment, among other things, was suitable for the use with fluorine gas at inlet pressures that may be negative (vacuum conditions), would be safe for the handling of fluorine gas, complied with all of the applicable

specifications, was properly designed, and would provide the required level of compression of fluorine gas required for ARC's manufacturing operations.

18.     ARC reasonably and justifiably relied on the representations of PDC that the Compression Equipment, among other things, complied with all of the applicable specifications, was properly designed, and would provide the required level of compression of fluorine gas required for ARC's manufacturing operations.

19.     PDC delivered and installed the Compression Equipment at ARC's Facility.

20.     After installation, the Compression Equipment failed to perform as suitable compression of fluorine gas required for ARC's manufacturing operations, failed to comply with the specifications, and failed to safely perform as represented by PDC. Among other things, the Compression Equipment repeatedly failed to operate and failed to provide the required level of compression of fluorine gas required for ARC's manufacturing operations.

21.     In the performance of PDC' duties owed to ARC, PDC should have discovered the defect by exercising reasonable care and diligence in the design, testing and manufacturing of the Compression Equipment.

22.     Representatives of PDC visited ARC's Facility to inspect and attempt to cure the defective Compression Equipment, but PDC was unable to remedy the repeated failures of the Compression Equipment.

23.     As a result of the failure of the Compression Equipment, ARC, among other things, procured and installed replacement equipment that complied with the applicable specifications, was safe and properly designed, and would provide the required safe level of compression of fluorine gas required for ARC's manufacturing operations.

24.     As a result of the failure of the Compression Equipment, ARC incurred additional costs, including costs and expenses to investigate and evaluate the defective Compression

Equipment, select and obtain replacement equipment and have the replacement equipment installed at ARC's Facility. As a direct result, ARC incurred costs, including labor, materials, and procurement costs, loss of productivity and impact damages.

25. ARC has suffered extensive damages and incurred significant costs in excess of Two Hundred Thousand Dollars ($ 200,00,000).

26. All conditions precedent for the commencement and maintenance of this action have been performed, have occurred, or have been excused, waived, or abandoned by PDC.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

27. Paragraphs 1-26 of this Complaint are incorporated herein by reference.

28. PDC is a seller of goods of the type similar to the Compression Equipment.

29. PDC and ARC entered into a contract of sale covering the Compression Equipment.

30. PDC breached the contract for sale.

31. ARC provided notice to PDC regarding PDC's breach of the sales contract.

32. As a direct and proximate result of PDC's breach of contract, ARC has suffered damages, including, but not limited to, the purchase price of the Compression Equipment and related costs thereto, such as labor, materials, and procurement costs, loss of productivity, and costs and expenses related to the investigation and evaluation of the unsafe and defective Compression Equipment and the selection, procurement and installation of safe replacement equipment.

### COUNT II
### BREACH OF IMPLIED WARRANTIES

33. Paragraphs 1-32 of this Complaint are incorporated herein by reference.

34. PDC is a seller of goods of the type similar to the Compression Equipment.

35. ARC purchased the Compression Equipment, which was designed, selected, tested and supplied by PDC.

36. PDC knew, or had reason to know, of the particular purpose for which the Compression Equipment was required by ARC, that ARC was relying on PDC's skill or judgment to select and furnish suitable equipment that would provide the required level of compression of fluorine gas required for ARC's manufacturing operations , and that ARC was the intended user of the Compression Equipment.

37. Among other things, PDC received and reviewed the specifications, and represented to ARC that the Compression Equipment would perform as suitable compression of fluorine gas required for ARC's manufacturing operations, complied with the ARC's specifications, and would provide the required level of compression of fluorine gas required for ARC's manufacturing operations.

38. PDC has made implied warranties of merchantability and fitness for a particular purpose to ARC that the Compression Equipment was safe for use with fluorine gas, suitable for compression of fluorine gas required for ARC's manufacturing operations, complied with the applicable specifications, and would provide the required level of compression of fluorine gas required for ARC's manufacturing operations.

39. PDC breached these implied warranties by providing the Compression Equipment, which was not merchantable, was unsafe for use with fluorine gas, defectively designed, was not suitable for the compression of fluorine gas required for ARC's manufacturing operations, did not comply with the applicable specifications, and did not provide the required level of compression of fluorine gas required for ARC's manufacturing operations.

40. ARC provided notice to PDC regarding PDC's breach of warranty within a reasonable time after ARC discovered the breach.

41. As a direct and proximate result of PDC's breach of implied warranties, ARC has suffered damages, including, but not limited to, the purchase price of the Compression Equipment and related costs thereto, such as labor, materials, and procurement costs, loss of productivity, and costs and expenses related to the investigation and evaluation of the unsafe and defective Compression Equipment and the selection, procurement and installation of safe replacement equipment.

## COUNT III
## BREACH OF EXPRESS WARRANTY

42. Paragraphs 1-41 of this Complaint are incorporated herein by reference.

43. ARC purchased the Compression Equipment, which was designed, selected, tested and supplied by PDC.

44. PDC made affirmations of fact and promises to ARC that the Compression Equipment was safe for use with fluorine gas, would perform as suitable compression of fluorine gas required for ARC's manufacturing operations, complied with ARC's specifications, and would provide the required level of compression of fluorine gas required for ARC's manufacturing operations.

45. Each of these affirmations of fact became part of the basis of the bargain for ARC's purchase of the Compression Equipment and PDC knew, or had reason to know, that ARC was relying on these affirmations of fact to select and furnish suitable compression equipment for compression of fluorine gas required for ARC's manufacturing operations.

46. PDC breached the express warranty by providing the Compression Equipment, which was unsafe for use with fluorine gas, defectively designed, was not suitable for the

compression of fluorine gas required for ARC's manufacturing operations, did not comply with the applicable specifications, and did not provide the required level of compression of fluorine gas required for ARC's manufacturing operations.

47. ARC provided notice to PDC regarding PDC's breach of warranty within a reasonable time after ARC discovered the breach.

48. As a direct and proximate result of PDC's breach of the express warranties, ARC has suffered damages, including, but not limited to, the purchase price of the Compression Equipment and related costs thereto, such as labor, materials, and procurement costs, loss of productivity, and costs and expenses related to the investigation and evaluation of the unsafe and defective Compression Equipment and the selection, procurement and installation of safe replacement equipment.

## COUNT IV
## NEGLIGENT MISREPRESENTATION

49. Paragraphs 1-48 of this Complaint are incorporated herein by reference.

50. Prior to ARC entering into a contract with PDC, PDC negligently made inaccurate and false representations, directly and indirectly, to ARC regarding the Compression Equipment's suitability for compression of fluorine gas required for ARC's manufacturing operations, compliance with ARC's specifications, and the level of compression of fluorine gas required for ARC's manufacturing operations.

51. In or around late 2014 or early 2015, ARC's representatives made an inquiry regarding PDC's diaphragm compression capabilities with respect to designing and manufacturing compressors that would operate under negative (vacuum) inlet pressures for the movement of fluorine gas. In response, PDC's Vice President contacted ARC about PDC's compression products and the ability of PDC to design and manufacture diaphragm compression equipment for the use with fluorine gas and that would also meet the safety requirement in compressing fluorine

gas.  Thereafter, representatives of PDC conducted a site visit of ARC's facility to review the existing diaphragm compressors in operation at ARC's Facility.  PDC's managers represented that ii could build a "Cadillac" compressor that would meet and exceed the quality of the existing compressors and would safely operate in ARC's fluorine operations.

       52.       PDC owed a duty of care to ARC by operation of the law.

       53.       PDC intended for ARC to rely on those representations and led ARC to believe that PDC was knowledgeable, competent and experienced in the design and manufacturing of compressors that would safely operate in compressing fluorine gas.

       54.       PDC knew, or should have known, that ARC would rely on those representations, ARC justifiably relied on those representations, and ARC's reliance thereon was reasonable.

       55.       PDC knew, or should have known, that its statements, if erroneous, would cause loss or injury to ARC.

       56.       As a direct and proximate result of PDC's negligent misrepresentations, ARC has suffered damages, including, but not limited to, the purchase price of the Compression Equipment and related costs thereto, such as labor, materials, and procurement costs, loss of productivity, and costs and expenses related to the investigation and evaluation of the unsafe and defective Compression Equipment and the selection, procurement and installation of safe replacement equipment.

s/ Dennis A. Caruso
Dennis A. Caruso, OBA # 11786
Mark A. Smith, OBA # 31231
Caruso Law Firm, P.C.
1325 East 15th Street, Suite 201
Tulsa, Oklahoma 74120
(918) 583-5900 phone
(918) 583-5902 fax
dcaruso@carusolawfirm.com
msmith@carusolawfirm.com

**ATTORNEYS FOR PLAINTIFF
ADVANCE RESEARCH CHEMICALS, INC.**